8

Heller, Appellant, *v.* Zoning Board of Adjustment.

Argued April 24, 1961. Before JONES, C. J., BELL, MUSMANNO, JONES, COHEN, BOK and EAGEN, JJ.

*Reuben E. Cohen,* with him *Nathan B. Feinstein,* and *Cohen, Shapiro and Cohen,* for appellants.

*Lenard L. Wolffe,* Assistant City Solicitor, with him *Herbert Smolen,* Assistant City Solicitor, *James L. Stern,* Deputy City Solicitor, and *David Berger,* City Solicitor, for zoning board of adjustment, appellee.

OPINION BY MR. JUSTICE BOK, May 25, 1961:

The Philadelphia Zoning Board of Adjustment affirmed the zoning administrator's refusal to issue a building permit to appellants, who then appealed here.

The property is a mid-block, four-storey brownstone house at 2130 Spruce Street that has been converted, under a permit approved by the board in 1959, into a multiple-family structure with nine luxury apartments. Without any exterior change contemplated, the owner now wants to add another apartment. The board has treated the case as one of variance, while appellants consider it as a simple matter of a building permit. In 1959 the board granted the petition of the owners for a variance, since the building had theretofore been a one-family residence and the side yard was narrower than was required by the ordinance in "F" Residential Zoning. The appellants now take the position that they have a continuing right, as if by res judicata, to this variance so long as they make no external structural changes or reduce the size of the yard. Their secondary position is that the zoning ordinance does not limit the number of families who may live in a multiple-family residence.

Since the board took no further testimony, we are within the girth of the rule that we will limit ourselves to deciding whether the board committed an error of law or manifestly abused its discretion: *Upper St. Clair Township Grange Zoning Case,* 397 Pa. 67 (1959), 152 A. 2d 768; *Luciany v. Zoning Board,* 399 Pa. 176 (1960), 159 A. 2d 701. We see neither variety of error in the record before us.

The board put its emphasis on the element of overcrowding in a middle-city area, and this answers appellants' contentions. We said, in *Best v. Zoning Board of Adjustment*, 393 Pa. 106 (1958), 141 A. 2d 606: "The City of Pittsburgh has undertaken to control the density of its population in accordance with a comprehensive plan drawn to promote the welfare of the community. It has provided residence districts for single-family homes, for two-family dwellings and for multiple-unit apartment houses. In this manner it has attempted, among other things, to control the demands upon community resources and to prevent an undue strain upon the facilities available in any section of the city. Such an undertaking is neither arbitrary nor unreasonable, and the constitutionality of single-family zoning restrictions have been generally upheld throughout the country as bearing a substantial relationship to the health, safety, morals and general welfare of the community."

While a change from nine families to ten seems both small and innocent, it might be neither when regarded as a trend, and it is with trends almost more than with individual monstrosities that the zoning authorities are concerned. Should the economy of the area falter and start down grade, the ten families—assuming the extra one arguendo—might become twenty. In its findings the board was preoccupied with the notion that successive increases in multi-family occupancy would tend towards slum conditions. The case cannot be confined to questions of yard size alone. Since the board made a specific finding that the health, morals, safety, and general welfare of the neighborhood would be adversely affected, and since this finding is obviously supported on the record by the effort to increase the population density, we think that the position of the board is secure.

As for the appellants' right to help themselves to the 1959 variance whenever they feel the need of it in future, the assertion contains its own answer. Not only are there other zoning factors than the size of the yard to be considered in each case, as we said above, but we have often held that no grant of a variance can be authority compelling the grant of another, even in the same block or vicinity: *Richman v. Zoning Board,* 391 Pa. 254 (1958), 137 A. 2d 280; *Ventresca v. Exley,* 358 Pa. 98 (1948), 56 A. 2d 210. Appellants' claim of right reduces to absurdity, since if countenanced it would give them almost a prescriptive right to the 1959 finding of hardship. Conditions change too drastically and too quickly to support any such idea. The case is unlike *Herskovits v. Irwin,* 299 Pa. 155 (1930), 149 A. 195, and *Lower Merion Township v. Frankel,* 358 Pa. 430 (1948), 57 A. 2d 900, cited by appellants, where a permit was issued and later retracted when the zoning ordinance was amended before work under the permit could be done. The distinction is obvious between such cases and the one at bar.

Allowing only for exceptional circumstances not apparent here, we hold that each case and each application must be dealt with anew and apart.

In *Fisher Building Permit Case,* 355 Pa. 364 (1946), 49 A. 2d 626, we held that the refusal of a permit to erect a barn before the applicant owned the property was not res judicata with respect to issuing one after he became owner. The usual rules regarding identity of persons and things apply in this field, and we are clear that there is no enabling identity between a nine-family house and a ten-family house. The board and the court below properly treated the matter as one involving a variance separate from the variance of 1959.

The order is affirmed.